# Exhibit A

## AGREEMENT
### on assignment of debt claim (Cessation)

**Kyiv, Ukraine**                                                        **September 14, 2020**

**ZUKK Trading Limited (Republic of Cyprus),** represented by **Nila Zhurawska**, acting on the basis of the power of attorney dated 13.09.2018, hereinafter referred to as "ASSIGNOR", on the one part, and a *citizen of the United States of America Oleg Zhukovsky*, address _____, hereinafter referred to as "ASSIGNEE", on the other part, have entered into this agreement as follows.

1.1 ASSIGNOR transfers and ASSIGNEE accepts the ASSIGNOR's right to claim against JSC "BROKBUSINESSBANK", the National Bank of Ukraine, the State of Ukraine (hereinafter referred to as DEBTOR/DEBTORS) for funds in the amount of and as of 14.09.2020, in particular:

1) 96 764 440,79 US dollars - the amount of the principal debt of JSC "BROKBUSINESSBANK" to ASSIGNOR on non-refunded deposit;

2) interest on deposits of ASSIGNOR at JSC "BROKBUSINESSBANK" for the period from 01.01.2014 till the date of their payment by DEBTOR/DEBTOR;

3) reimbursement of 3% per annum accrued in connection with the failure to refund deposits and interest on deposits to ASSIGNOR for the period from 01.01.2014 till the date of their payment by DEBTOR/DEBTOR;

4) lost profits.

The total amount of the Agreement on assignment of debt claim is 96 764 440,79 US dollars.

ASSIGNOR also transfers to ASSIGNEE in full the right to claim debt from DEBTOR/DEBTORS that will arise in the future.

ASSIGNORS's right to claim against DEBTOR/DEBTORS for the principal debt amount of 96 764 440,79 US dollars, which is equivalent to 1 141 957 338,19 UAH, is confirmed by the decision of the Executive Directorate of the Individuals Deposit Guarantee Fund No. ▮6/14 dated 16.10.2014 on approval of the register of accepted claims of creditors of JSC "BROKBUSINESSBANK", according to which the monetary claims of ZUKK Trading Limited against JSC "BROKBUSINESSBANK" were accepted and had to be satisfied on the seventh priority basis, according to the notification of the Individuals Deposit Guarantee Fund dated 06.11.2014 No. ▮010-04.

1.2. The rights of claim specified in clause 1.1 of this Agreement arose in connection with the conclusion of investment bank deposit agreements between ZUKK Trading Limited and JSC "Brokbusinessbank", in particular:

- No.01-07-2010 dated 07.07.2010.
- No.02-07-2010 dated 07.07.2010.
- No.03-07-2010 dated 07.07.2010.
- No.04-07-2010 dated 07.07.2010.
- No.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 dated 29.10.2012.

1.3. At the time of conclusion of this Agreement, obligations for refunding the funds by DEBTOR/DEBTORS have not been fulfilled.

1.4. The right to claim against DEBTOR/DEBTORS is transferred to ASSIGNEE in full from the date of the conclusion of this Agreement. ASSIGNOR is responsible for the accuracy of documents and other information transferred in accordance with this Agreement and guarantees the availability and transfer of all claims assigned to ASSIGNEE.

1.5. ASSIGNEE, which has acquired the right to claim, according to this Agreement, does not have the right to assign (resell) the right to claim in full or in part. Any assignment or delegation in violation of clause 1.5. of the agreement is invalid.

ASSIGNEE cannot be a single (exclusive) person, which has the right to claim the debt specified in clause 1.1 of this Agreement, and can be one of several persons to whom ASSIGNOR has transferred the right to claim the same debt. In case of full or partial assignment of the right to claim the debt specified in clause 1.1 of this Agreement, ASSIGNOR is obliged to notify ASSIGNEE hereof.

ASSIGNEE has equal rights with third parties to whom ASSIGNOR has also transferred the right to claim the debt specified in clause 1.1 of this Agreement.

1.6. The transfer of the right to claim is a paid transfer. The cost of transfer of the right to claim is

96 280 618,60 (ninety six million two hundred eighty thousand six hundred eighteen) US dollars.

In the event that ASSIGNEE collects other (additional) amounts from DEBTOR/DEBTORS (interest on the deposit; 3% per annum, accrued in connection with the failure to refund deposits and interest on deposits to ASSIGNOR; forfeit, material and moral damage and other sanctions or payments), which have arisen or will arise in the future on the basis of the rights transferred already under this Agreement, and to which ASSIGNOR has the right, ASSIGNEE is entitled to 0,5% of all additionally collected amounts, as well as 0,5% of all additionally collected amounts for lawyers' fees.

1.7. The collection of funds from DEBTOR and payment under this Agreement shall be carried out by ASSIGNEE to ASSIGNOR only with the participation of the escrow agent, the agreement with which is an integral part of this Agreement. The person acting as the escrow agent must be agreed between ASSIGNOR and ASSIGNOR in advance by entering into an appropriate tripartite agreement between ASSIGNOR, ASSIGNEE and the escrow agent.

The Parties agreed that a prerequisite of the agreement between ASSIGNEE and the lawyer (lawyers) should be the following condition: "The lawyer (lawyers) who received all or part of the debt specified in clause 1.1 of this Agreement must, within 5 days, transfer the amount received to the escrow agent, whom ASSIGNEE will specify and with whom ASSIGNEE and ASSIGNOR have entered into a tripartite agreement".

1.8. Payment in accordance with clause 1.6. of this Agreement shall be carried out immediately after the refund or collection of the debt amount from DEBTOR/DEBTORS in part or in full.

1.9. ASSIGNEE is obliged to notify DEBTOR/DEBTORS in writing about the assignment of the right of claim.

1.10. All disputes and disagreements that may arise between the Parties on issues related to this Agreement will be resolved through negotiations.

If it is impossible to resolve the dispute through negotiations, the Parties have agreed to consider such disputes at the location of the defendant.

1.11. ASSIGNOR has the right, without the consent of ASSIGNEE, to conclude in the interests of the latter a Contract with a Lawyer (Lawyers) and pay for their services in full or in part, as well as receive a report on the work performed directly from them.

1.12. This Agreement contains an exhaustive list of agreements between the Parties regarding its essential and other conditions, which are assumed by the Parties as necessary.

1.13. Any change to this Agreement must be made in writing and agreed by the Parties.

1.14. The term of this Agreement is established from the date of its signature by both Parties and is valid until March 01, 2021. In this case, the term of the Agreement may be extended on the basis of a written agreement between the Parties.

1.15. In case of termination of this Agreement, ASSIGNEE must return within a month the original documents received from ASSIGNOR in order to fulfill the terms of this Agreement.

### Address and details of the Parties

**ASSIGNOR**                                           **ASSIGNEE**

**ZUKK Trading Limited**                               **Oleg Zhukovsky**
Vyronos, 24
P. Lordos Centre, Block B,
Office 305, Limassol,
Republic of Cyprus

 [signature] / **Nila Zhurawska**/                      [signature] / **Oleg Zhukovsky** /
Date:                                                   Date:
[seal: ZUKK Trading Limited * Limassol * Cyprus]

Переклад тексту цього документа з російської мови на англійську мову виконано перекладачем бюро перекладів «Анна Світ» Горбик Майєю Євгеніївною.
(адреса: Україна, 03049, Київ, проспект Повітрофлотський 10, офіс 23, тел. 592-29-11)
This translation of the document from the Russian language into the English language is done by the translator of the Translation Office "Anna Svit"
(address: Ukraine, 03049, Kyiv, Povitroflotsky Avenue, 10, office 23, tel. 592-29-11)
Mrs. Gorbyk Maiia

Підпис/Signature: _____.

Директор ПП БП „Анна Світ" Ліпов Ю. І.
Director of PE TO "Anna Svit" Mr. Y.I. Lipov



Прошито, пронумеровано та скріплено
печаткою_____ 4 _____ аркушів.

Sealed, numbered_____ 4 _____pages.

# ДОГОВОР
## уступки права требования (Цессии)

г. Киев, Украина                                                           «14» сентября 2020г.

**Компания ЗУКК Трейдинг Лимитед (Республика Кипр)**, в лице представителя **Нилы Журавской**, действующейна основании доверенности от 13.09.2018г., именуемое в дальнейшем «ЦЕДЕНТ», с одной стороны,

и        *гражданин        Соединенных        Штатов        Америки        Олег        Жуковский*,

адрес_____,
именуемый в дальнейшем «ЦЕССИОНАРИЙ», с другой стороны, заключили настоящий договор о нижеследующем.

1.1 ЦЕДЕНТ передаёт, а ЦЕССИОНАРИЙ принимает право требования ЦЕДЕНТА к АО «БРОКБИЗНЕСБАНК», Национальному банку Украины, Государству Украина (далее по тексту – ДОЛЖНИК/ДОЛЖНИКИ) на денежные средства в размере и по состоянию на 14.09.2020г., а именно:

1)  96 764 440,79 долларов США - сумму основного долга АО «БРОКБИЗНЕСБАНК» перед ЦЕДЕНТОМ по невозвращенным вкладам;

2)  проценты на вклады ЦЕДЕНТА в АО «БРОКБИЗНЕСБАНК»  за период с 01.01.2014 по момент выплаты их ДОЛЖНИКОМ/ДОЛЖНИКАМИ;

3)  возмещения 3% годовых, начисленные в связи невозвращением ЦЕДЕНТУ вкладов и процентов по вкладам за период с 01.01.2014 по момент выплаты их ДОЛЖНИКОМ/ДОЛЖНИКАМИ;

4)  упущенную выгоду.

Общая сумма Договора уступки права требования составляет 96 764 440,79 долларов США.

ЦЕДЕНТ также передает ЦЕССИОНАРИЮ в полном объеме право требования у ДОЛЖНИКА/ДОЛЖНИКОВ долга, который возникнем в будущем.

Право требования ЦЕДЕНТА к ДОЛЖНИКУ/ДОЛЖНИКАМ на сумму основного долга в размере  96 764 440,79  долларов  США  доларов,  что  эквивалентно  1 141 957 338,19  грн., подтверждается решением исполнительной дирекции Фонда гарантирования вкладов физических лиц №▮6/14  от  16.10.2014г.  об утверждении реестра акцептованных требований кредиторов АО "Брокбизнесбанк", согласно которого денежные требования компании ЗУКК Трейдинг Лимитед к АО "Брокбизнесбанк были акцептованы и должны были быть удовлетворены в седьмую очередь, согласно уведомления Фонда гарантирования вкладов физических лиц от 06.11.2014г. №▮010-04.

1.2. Указанные в пункте 1.1 настоящего Договора права требования возникли в связи с заключением  компанией  ЗУКК  Трейдинг  Лимитед  и  АО  "Брокбизнесбанк"  договоров инвестиционного банковского вклада, а именно:

- №01-07-2010 от 07.07.2010г.
- №02-07-2010 от 07.07.2010г.
- №03-07-2010 от 07.07.2010г.
- №04-07-2010 от 07.07.2010г.
- №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 от 29.10.2012г.

1.3. На момент заключения настоящего Договора обязательства по возврату денежных средств ДОЛЖНИКОМ/ДОЛЖНИКАМИ исполнены не были.

1.4.  Право требования к  ДОЛЖНИКУ/ДОЛЖНИКАМ  переходит к  ЦЕССИОНАРИЮ  в полном объёме с момента заключения настоящего Договора. ЦЕДЕНТ несёт ответственность за достоверность передаваемых в соответствии с настоящим Договором документов, другой информации и гарантирует наличие и передачу всех уступленных ЦЕССИОНАРИЮ требований.

1.5. ЦЕССИОНАРИЙ, который приобрел право требования, согласно настоящего Договора не имеет право переуступать (перепродавать) право требования в полном объеме или частично. Любая уступка или делегирование в нарушение п. 1.5. договора являюся недействительны.

ЦЕССИОНАРИЙ  не  может  быть  единым  (эксклюзивным)  лицом,  которое  имеет  право требования долга, указанного в пункте 1.1 данного Договора, и может быть одним из нескольких лиц, которым ЦЕДЕНТ передал право требование одного и того же долга. В случае полной или частичной уступки права требования долга, указанного в пункте 1.1 данного Договора, ЦЕДЕНТ обязан уведомить об этом ЦЕССИОНАРИЯ.

ЦЕССИОНАРИЙ имеет равные права с третьими лицами, которым ЦЕДЕНТОМ также было передано право требования долга, указанного в пункте 1.1 данного Договора.

1.6.  Передача права требования является платной. Стоимость передачи права требования составляет  96 280 618,60  (девяносто  шесть  миллионов  двести  восемьдесят  тысяч  шестьсот восемнадцать долларов) долларов США.

В случае, если ЦЕССИОНАРИЙ взыщет с ДОЛЖНИКА/ДОЛЖНИКОВ другие (дополнительные) суммы (проценты по вкладу; 3% годовых, начисленные в связи невозвращением ЦЕДЕНТУ вкладов и процентов по вкладам; неустойка, материальный и моральный ущерб и другого рода санкции или выплаты), на которые возникли или возникнут в будущем на основании уже переданных прав по этому Договору, и на какие имеет право ЦЕДЕНТ, ЦЕССИОНАРИЮ полагается 0,5% от всех дополнительно взысканных сумм, а также 0,5% от всех дополнительно взысканных сумм на оплату услуг адвокатов.

1.7. Взыскание средств с ДОЛЖНИКА и оплата по настоящему Договору осуществляется ЦЕССИОНАРИЕМ ЦЕДЕНТУ только при участии агента условного депонирования, договор с которым является неотъемлемой частью этого Договора. Лицо, выполняющее функции агента по условному депонированию, должно быть согласовано ЦЕССИОНАРИЕМ с ЦЕДЕНТОМ заранее, путем заключения соответствующего трехстороннего соглашения между ЦЕДЕНТОМ, ЦЕССИОНАРИЕМ и агентом условного депонирования.

Стороны согласовали, что обязательным условием договора ЦЕССИОНАРИЯ с адвокатом (адвокатами) должно быть такое условие: «Адвокат (адвокаты) получивший полностью или частично долг, указанный в пункте 1.1 данного Договора, должен на протяжении 5 дней перечислить полученную сумму агенту по условному депонированию, которого укажет ЦЕССИОНАРИЙ и с которым у ЦЕССИОНАРИЯ и ЦЕДЕНТА заключен трехсторонний договор.

1.8. Оплата согласно п.1.6. настоящего Договора осуществляется незамедлительно после возврата или взыскания с ДОЛЖНИКА/ДОЛЖНИКОВ полной или частичной суммы долга.

1.9. ЦЕССИОНАРИЙ обязуется письменно уведомить ДОЛЖНИКА/ДОЛЖНИКОВ о состоявшейся уступке права требования.

1.10. Все споры и разногласия, которые могут возникнуть между Сторонами по вопросам, связанным с настоящим Договором, будут разрешаться путём переговоров.

В случае невозможности урегулирования разногласий путём переговоров, Стороны пришли к соглашению рассматривать такие споры по месту нахождения ответчика.

1.11. ЦЕДЕНТ имеет право без согласования с ЦЕССИОНАРИЕМ, заключать в интересах последнего Договор с Адвокатом (Адвокатами) и оплачивать их услуги полностью или частично, а также получать непосредственно от них отчет о выполненной работе.

1.12. Настоящий Договор содержит исчерпывающий перечень договорённостей Сторон относительно существенных и иных его условий, подразумевающихся Сторонами как необходимые.

1.13. Любое изменение этого Договора должно быть оформлено в письменной форме и согласовано Сторонами.

1.14. Срок действия настоящего Договора устанавливается с момента его подписания обеими Сторонами и действует до 01 марта 2021 года. При этом срок действия Договора может быть продлен на основании письменной договоренности сторон.

1.15. В случае прекращения данного Договора, ЦЕССИОНАРИЙ на протяжении месяца должен вернуть оригиналы документов, полученных от ЦЕДЕНТА, для выполнения условий данного Договора.

## Адреса и реквизиты Сторон

**ЦЕДЕНТ**                                      **ЦЕССИОНАРИЙ**

**ЗУКК Трейдинг Лимитед**                       **Олег Жуковский**
Виронос, 24
П. Лордос Центр, Блок Б,
Офис 305, Лимассол,
Республика Кипр

_____ /Нила Журавская/               _____ /Олег Жуковский/
Дата:                                           Дата:

## AGREEMENT
### on assignment of debt claim (Cessation)

**Kyiv, Ukraine**                                                    **September 14, 2020**

**Limited Liability Company "Intertransgroup" (Ukraine),** represented by the director Didylivskyi Vitalii Myroslavovych, hereinafter referred to as "ASSIGNOR", on the one part,
                           and   a   *citizen   of   the   United   States   of   America   Oleg   Zhukovsky*,   address
_____,   hereinafter
referred to as "ASSIGNEE", on the other part, have entered into this agreement as follows.

1.1 ASSIGNOR transfers and ASSIGNEE accepts the ASSIGNOR's right to claim against JSC "BROKBUSINESSBANK", the National Bank of Ukraine, the State of Ukraine (hereinafter referred to as DEBTOR/DEBTORS) for funds in the amount of and as of 14.09.2020, in particular:

1) 3 059 358,32 US dollars - the amount of the principal debt of JSC "BROKBUSINESSBANK" to ASSIGNOR on non-refunded deposit;

2) interest on deposits of ASSIGNOR at JSC "BROKBUSINESSBANK" for the period from 01.01.2014 till the date of their payment by DEBTOR/DEBTOR;

3) reimbursement of 3% per annum accrued in connection with the failure to refund deposits and interest on deposits to ASSIGNOR for the period from 01.01.2014 till the date of their payment by DEBTOR/DEBTOR;

4) lost profits.

The total amount of the Agreement on assignment of debt claim is 3 059 358,32 US dollars.

ASSIGNOR also transfers to ASSIGNEE in full the right to claim debt from DEBTOR/DEBTORS that will arise in the future.

ASSIGNOR's right to claim against DEBTOR/DEBTORS for the principal debt amount of 3 059 358,32 US dollars, which is equivalent to 56 640 150,23 UAH, is confirmed by the decision of the Executive Directorate of the Individuals Deposit Guarantee Fund No.226/14 dated 16.10.2014 on approval of the register of accepted claims of creditors of JSC "BROKBUSINESSBANK", according to which the monetary claims of LLC "Intertransgroup" against JSC "BROKBUSINESSBANK" were accepted and had to be satisfied on the seventh priority basis, according to the notification of the Individuals Deposit Guarantee Fund No.7/35-zrk dated 09.09.2015.

1.2. The rights of claim specified in clause 1.1 of this Agreement arose in connection with the conclusion of investment bank deposit agreements between LLC "Intertransgroup" and JSC "Brokbusinessbank", in particular:

- bank deposit agreement No.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 dated 27.12.2012;
- bank deposit agreement No.28-03-2013 dated 04.03.2013,
- agreement No. 22479 dated 02.06.2011.
- agreement No. 105355 dated 12.11.2012.
- agreement No. 105354 dated 12.11.2012.
- agreement No. KSKR/20 dated 12.08.2010.
- agreement No. KSKR/19 dated 12.08.2010.

1.3. At the time of conclusion of this Agreement, obligations for refunding the funds by DEBTOR/DEBTORS have not been fulfilled.

1.4. The right to claim against DEBTOR/DEBTORS is transferred to ASSIGNEE in full from the date of the conclusion of this Agreement. ASSIGNOR is responsible for the accuracy of documents and other information transferred in accordance with this Agreement and guarantees the availability and transfer of all claims assigned to ASSIGNEE.

1.5. ASSIGNEE, which has acquired the right to claim, according to this Agreement, does not have the right to assign (resell) the right to claim in full or in part. Any assignment or delegation in violation of clause 1.5. of the agreement is invalid.

ASSIGNEE cannot be a single (exclusive) person, which has the right to claim the debt specified in clause 1.1 of this Agreement, and can be one of several persons to whom ASSIGNOR has transferred the right to claim the same debt. In case of full or partial assignment of the right to claim the debt specified in clause 1.1 of this Agreement, ASSIGNOR is obliged to notify ASSIGNEE hereof.

ASSIGNEE has equal rights with third parties to whom ASSIGNOR has also transferred the right to claim the debt specified in clause 1.1 of this Agreement.

1.6. The transfer of the right to claim is a paid transfer. The cost of transfer of the right to claim is 3 028 764,74 (three million twenty eight thousand seven hundred sixty four) US dollars.

In the event that ASSIGNEE collects other (additional) amounts from DEBTOR/DEBTORS (interest on the deposit; 3% per annum, accrued in connection with the failure to refund deposits and interest on deposits to ASSIGNOR; forfeit, material and moral damage and other sanctions or payments), which have arisen or will arise in the future on the basis of the rights transferred already under this Agreement, and to which ASSIGNOR has the right, ASSIGNEE is entitled to 0,5% of all additionally collected amounts, as well as 0,5% of all additionally collected amounts for lawyers' fees.

1.7. The collection of funds from DEBTOR and payment under this Agreement shall be carried out by ASSIGNEE to ASSIGNOR only with the participation of the escrow agent, the agreement with which is an integral part of this Agreement. The person acting as the escrow agent must be agreed between ASSIGNOR and ASSIGNOR in advance by entering into an appropriate tripartite agreement between ASSIGNOR, ASSIGNEE and the escrow agent.

The Parties agreed that a prerequisite of the agreement between ASSIGNEE and the lawyer (lawyers) should be the following condition: "The lawyer (lawyers) who received all or part of the debt specified in clause 1.1 of this Agreement must, within 5 days, transfer the amount received to the escrow agent, whom ASSIGNEE will specify and with whom ASSIGNEE and ASSIGNOR have entered into a tripartite agreement".

1.8. Payment in accordance with clause 1.6. of this Agreement shall be carried out immediately after the refund or collection of the debt amount from DEBTOR/DEBTORS in part or in full.

1.9. ASSIGNEE is obliged to notify DEBTOR/DEBTORS in writing about the assignment of the right of claim.

1.10. All disputes and disagreements that may arise between the Parties on issues related to this Agreement will be resolved through negotiations.

If it is impossible to resolve the dispute through negotiations, the Parties have agreed to consider such disputes at the location of the defendant.

1.11. ASSIGNOR has the right, without the consent of ASSIGNEE, to conclude in the interests of the latter a Contract with a Lawyer (Lawyers) and pay for their services in full or in part, as well as receive a report on the work performed directly from them.

1.12. This Agreement contains an exhaustive list of agreements between the Parties regarding its essential and other conditions, which are assumed by the Parties as necessary.

1.13. Any change to this Agreement must be made in writing and agreed by the Parties.

1.14. The term of this Agreement is established from the date of its signature by both Parties and is valid until March 01, 2021. In this case, the term of the Agreement may be extended on the basis of a written agreement between the Parties.

1.15. In case of termination of this Agreement, ASSIGNEE must return within a month the original documents received from ASSIGNOR in order to fulfill the terms of this Agreement.

**Address and details of the Parties**

**ASSIGNOR**                                                    **ASSIGNEE**

**LLC "Intertransgroup"**                                      **Oleg Zhukovsky**
03049, Kyiv, Arkhitektora Kobelieva str., 1/7
Identification number 33260662
IBAN No.UA[                    ]732 4

 [signature] / **Didylivskyi V.M.** /                          [signature] / **Oleg Zhukovsky** /
Date:                                                          Date:
[seal: Ukraine * Kyiv * Limited Liability Company
"Intertransgroup" * Identification code 33260662 ]

Переклад тексту цього документа з російської мови на англійську мову виконано перекладачем бюро перекладів «Анна Світ» Горбик Майєю Євгеніївною.

(адреса: Україна, 03049, Київ, проспект Повітрофлотський 10, офіс 23, тел. 592-29-11)

This translation of the document from the Russian language into the English language is done by the translator of the Translation Office "Anna Svit"

(address: Ukraine, 03049, Kyiv, Povitroflotsky Avenue, 10, office 23, tel. 592-29-11)

Mrs. Gorbyk Maiia

Підпис/Signature: _____.

Директор ПП БП „Анна Світ" Ліпов Ю. І.
Director of PE TO "Anna Svit" Mr. Y.I. Lipov _____



Прошито, пронумеровано та скріплено печаткою_____ 4 _____ аркушів.

Sealed, numbered_____ 4 _____pages.

## ДОГОВОР
### уступки права требования (Цессии)

г. Киев, Украина                                          «14» сентября 2020г.

Общество с ограниченной ответственностью «Интертрансгруп» (Украина), в лице директора Дидыливского Виталия Мирославовича, именуемое в дальнейшем «ЦЕДЕНТ», с одной стороны,

и   *гражданин   Соединенных   Штатов   Америки   Олег   Жуковский,*
адрес _____,
именуемый в дальнейшем «ЦЕССИОНАРИЙ», с другой стороны, заключили настоящий договор о нижеследующем.

1.1 ЦЕДЕНТ передаёт, а ЦЕССИОНАРИЙ принимает право требования ЦЕДЕНТА к АО «БРОКБИЗНЕСБАНК», Национальному банку Украины, Государству Украина (далее по тексту – ДОЛЖНИК/ДОЛЖНИКИ) на денежные средства в размере и по состоянию на |4.04| 2020г., а именно:

1) 3 059 358,32 долларов США - сумму основного долга АО «БРОКБИЗНЕСБАНК» перед ЦЕДЕНТОМ по невозвращенным вкладам;

2) проценты на вклады ЦЕДЕНТА в АО «БРОКБИЗНЕСБАНК» за период с 01.01.2014 по момент выплаты их ДОЛЖНИКОМ/ДОЛЖНИКАМИ;

3) возмещения 3% годовых, начисленные в связи невозвращением ЦЕДЕНТУ вкладов и процентов по вкладам за период с 01.01.2014 по момент выплаты их ДОЛЖНИКОМ/ДОЛЖНИКАМИ;

4) упущенную выгоду.

Общая сумма Договора уступки права требования составляет 3 059 358,32 долларов США.

ЦЕДЕНТ также передает ЦЕССИОНАРИЮ в полном объеме право требования у ДОЛЖНИКА/ДОЛЖНИКОВ долга, который возникнем в будущем.

Право требования ЦЕДЕНТА к ДОЛЖНИКУ/ДОЛЖНИКАМ на сумму основного долга в размере 3 059 358,32 долларов США доларов, что эквивалентно 56 640 150,23 грн., подтверждается решением исполнительной дирекции Фонда гарантирования вкладов физических лиц №226/14 от 16.10.2014г. об утверждении реестра акцептованных требований кредиторов АО "Брокбизнесбанк", согласно которого денежные требования компании ООО «Интертрансгруп» к АО "Брокбизнесбанк были акцептованы и должны были быть удовлетворены в седьмую очередь, согласно уведомления Фонда гарантирования вкладов физических лиц №7/35-зрк от 09.09.2015г.

1.2. Указанные в пункте 1.1 настоящего Договора права требования возникли в связи с заключением компанией ООО «Интертрансгруп» и АО "Брокбизнесбанк" договоров инвестиционного банковского вклада, а именно:

- договор банковского вклада №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 от 27.12.2012г.;
- договор банковского вклада №28-03-2013 от 04.03.2013г.,
- договор № 22479 от 02.06.2011г.
- договор № 105355 от 12.11.2012г.
- договор № 105354 от 12.11.2012г.
- договор № КСКР/20 от 12.08.2010г.
- договор № КСКР/19 от 12.08.2010г.

1.3. На момент заключения настоящего Договора обязательства по возврату денежных средств ДОЛЖНИКОМ/ДОЛЖНИКАМИ исполнены не были.

1.4. Право требования к ДОЛЖНИКУ/ДОЛЖНИКАМ переходит к ЦЕССИОНАРИЮ в полном объёме с момента заключения настоящего Договора. ЦЕДЕНТ несет ответственность за достоверность передаваемых в соответствии с настоящим Договором документов, другой информации и гарантирует наличие и передачу всех уступленных ЦЕССИОНАРИЮ требований.

1.5. ЦЕССИОНАРИЙ, который приобрел право требования, согласно настоящего Договора не имеет право переуступать (перепродавать) право требования в полном объеме или частично. Любая уступка или делегирование в нарушение п. 1.5. договора являюся недействительны.

ЦЕССИОНАРИЙ не может быть единым (эксклюзивным) лицом, которое имеет право требования долга, указанного в пункте 1.1 данного Договора, и может быть одним из нескольких лиц, которым ЦЕДЕНТ передал право требование долга одного и того же долга. В случае полной или частичной уступки права требования долга, указанного в пункте 1.1 данного Договора, ЦЕДЕНТ обязан уведомить об этом ЦЕССИОНАРИЯ.

ЦЕССИОНАРИЙ имеет равные права с третьими лицами, которым ЦЕДЕНТОМ также было передано право требования долга, указанного в пункте 1.1 данного Договора.

1.6. Передача права требования является платной. Стоимость передачи права требования составляет 3 028 764,74 (три миллиона двадцать восемь тысяч семьсот шестьдесят четыре доллаов) долларов США.

В случае, если ЦЕССИОНАРИЙ взыщет с ДОЛЖНИКА/ДОЛЖНИКОВ другие (дополнительные) суммы (проценты по вкладу; 3% годовых, начисленные в связи невозвращением ЦЕДЕНТУ вкладов и процентов по вкладам; неустойка, материальный и моральный ущерб и другого рода санкции или выплаты), на которые возникли или возникнут в будущем на основании уже переданных прав по этому Договору, и на какие имеет право ЦЕДЕНТ, ЦЕССИОНАРИЮ полагается 0,5% от всех дополнительно взысканных сумм, а также 0,5% от всех дополнительно взысканных сумм на оплату услуг адвокатов.

1.7. Взыскание средств с ДОЛЖНИКА и оплата по настоящему Договору осуществляется ЦЕССИОНАРИЕМ ЦЕДЕНТУ только при участии агента условного депонирования, договор с которым является неотъемлемой частью этого Договора. Лицо, выполняющее функции агента по условному депонированию, должно быть согласовано ЦЕССИОНАРИЕМ с ЦЕДЕНТОМ заранее, путем заключения соответствующего трехстороннего соглашения между ЦЕДЕНТОМ, ЦЕССИОНАРИЕМ и агентом условного депонирования.

Стороны согласовали, что обязательным условием договора ЦЕССИОНАРИЯ с адвокатом (адвокатами) должно быть такое условие: «Адвокат (адвокаты) получивший полностью или частично долг, указанный в пункте 1.1 данного Договора, должен на протяжении 5 дней перечислить полученную сумму агенту по условному депонированию, которого укажет ЦЕССИОНАРИЙ и с которым у ЦЕССИОНАРИЯ и ЦЕДЕНТА заключен трехсторонний договор.

1.8. Оплата согласно п.1.6. настоящего Договора осуществляется незамедлительно после возврата или взыскания с ДОЛЖНИКА/ДОЛЖНИКОВ полной или частичной суммы долга.

1.9. ЦЕССИОНАРИЙ обязуется письменно уведомить ДОЛЖНИКА/ДОЛЖНИКОВ о состоявшейся уступке права требования.

1.10. Все споры и разногласия, которые могут возникнуть между Сторонами по вопросам, связанным с настоящим Договором, будут разрешаться путем переговоров.

В случае невозможности урегулирования разногласий путём переговоров, Стороны пришли к соглашению рассматривать такие споры по месту нахождения ответчика.

1.11. ЦЕДЕНТ имеет право без согласования с ЦЕССИОНАРИЕМ, заключать в интересах последнего Договор с Адвокатом (Адвокатами) и оплачивать их услуги полностью или частично, а также получать непосредственно от них отчет о выполненной работе.

1.12. Настоящий Договор содержит исчерпывающий перечень договорённостей Сторон относительно существенных и иных его условий, подразумевающихся Сторонами как необходимые.

1.13. Любое изменение этого Договора должно быть оформлено в письменной форме и согласовано Сторонами.

1.14. Срок действия настоящего Договора устанавливается с момента его подписания обеими Сторонами и действует до 01 марта 2021 года. При этом срок действия Договора может быть продлен на основании письменной договоренности сторон.

1.15. В случае прекращения данного Договора, ЦЕССИОНАРИЙ на протяжении месяца должен вернуть оригиналы документов, полученных от ЦЕДЕНТА, для выполнения условий даного Договора.

### Адреса и реквизиты Сторон

**ЦЕДЕНТ**

**ЦЕССИОНАРИЙ**

**ООО «Интертрансгруп»**
03049, г.Киев, ул. Архитектора Кобелева, 1/7
Идентификационный номер 33260662
IBAN №▮▮▮▮▮▮▮▮▮▮▮▮▮▮ 9732 4
ПАКТ «Индустриалбанк», г.Киев

Олег Жуковский

/Дидылнвский В.М./

14.09. /Олег Жуковский/
Дата:

2

## AGREEMENT
### on assignment of debt claim (Cessation)

**Kyiv, Ukraine**                                                    **September 14, 2020**

**Kovzel Mykola,** identification code ███████ 3318, passport of the citizen of Ukraine series KA No. ███ 823, issued on 14.10.1997 by Zaliznychnyi RV UMVS of Ukraine in Lviv region, hereinafter referred to as "ASSIGNOR", on the one part,

and a ***citizen of the United States of America Oleg Zhukovsky***, address _____, hereinafter referred to as "ASSIGNEE", on the other part, have entered into this agreement as follows.

1.1 ASSIGNOR transfers and ASSIGNEE accepts the ASSIGNOR's right to claim against JSC "BROKBUSINESSBANK", the National Bank of Ukraine, the State of Ukraine (hereinafter referred to as DEBTOR/DEBTORS) for funds in the amount of and as of 14.09.2020, in particular:

1) 4 185 204,00 US dollars - the amount of the principal debt of JSC "BROKBUSINESSBANK" to ASSIGNOR on non-refunded deposit;

2) interest on deposits of ASSIGNOR at JSC "BROKBUSINESSBANK" for the period from 01.01.2014 till the date of their payment by DEBTOR/DEBTOR;

3) reimbursement of 3% per annum accrued in connection with the failure to refund deposits and interest on deposits to ASSIGNOR for the period from 01.01.2014 till the date of their payment by DEBTOR/DEBTOR;

4) reimbursement of 3% fee accrued per every day of delay in fulfilment of the terms of agreement;

5) lost profits;

6) moral damage.

The total amount of the Agreement on assignment of debt claim is 4 185 204,00 US dollars.

ASSIGNOR also transfers to ASSIGNEE in full the right to claim debt from DEBTOR/DEBTORS that will arise in the future.

ASSIGNORS's right to claim against DEBTOR/DEBTORS for the principal debt amount of 4 185 204,00 US dollars, which is equivalent to 53 277 679,50 UAH, is confirmed by the decision of the Executive Directorate of the Individuals Deposit Guarantee Fund No.226/14 dated 16.10.2014 on approval of the register of accepted claims of creditors of JSC "BROKBUSINESSBANK", according to which the monetary claims of Kovzel Mykola Olehovych against JSC "BROKBUSINESSBANK" were accepted and had to be satisfied on the fourth priority basis, according to the notification of the Individuals Deposit Guarantee Fund No. 4/3670-kr dated 28.10.2014.

1.2. The rights of claim specified in clause 1.1 of this Agreement arose in connection with the conclusion of investment bank deposit agreement No.323-01-13-840 dated 11.01.2013 between Kovzel Mykola Olehovych and JSC "Brokbusinessbank".

1.3. At the time of conclusion of this Agreement, obligations for refunding the funds by DEBTOR/DEBTORS have not been fulfilled.

1.4. The right to claim against DEBTOR/DEBTORS is transferred to ASSIGNEE in full from the date of the conclusion of this Agreement. ASSIGNOR is responsible for the accuracy of documents and other information transferred in accordance with this Agreement and guarantees the availability and transfer of all claims assigned to ASSIGNEE.

1.5. ASSIGNEE, which has acquired the right to claim, according to this Agreement, does not have the right to assign (resell) the right to claim in full or in part. Any assignment or delegation in violation of clause 1.5. of the agreement is invalid.

ASSIGNEE cannot be a single (exclusive) person, which has the right to claim the debt specified in clause 1.1 of this Agreement, and can be one of several persons to whom ASSIGNOR has transferred the right to claim the same debt. In case of full or partial assignment of the right to claim the debt specified in clause 1.1 of this Agreement, ASSIGNOR is obliged to notify ASSIGNEE hereof.

ASSIGNEE has equal rights with third parties to whom ASSIGNOR has also transferred the right to claim the debt specified in clause 1.1 of this Agreement.

1.6. The transfer of the right to claim is a paid transfer. The cost of transfer of the right to claim is 4 143 351,96 (four million one hundred forty three thousand three hundred fifty one) US dollars.

In the event that ASSIGNEE collects other (additional) amounts from DEBTOR/DEBTORS

(interest on the deposit; 3% per annum, accrued in connection with the failure to refund deposits and interest on deposits to ASSIGNOR; forfeit, material and moral damage and other sanctions or payments), which have arisen or will arise in the future on the basis of the rights transferred already under this Agreement, and to which ASSIGNOR has the right, ASSIGNEE is entitled to 0,5% of all additionally collected amounts, as well as 0,5% of all additionally collected amounts for lawyers' fees.

1.7. The collection of funds from DEBTOR and payment under this Agreement shall be carried out by ASSIGNEE to ASSIGNOR only with the participation of the escrow agent, the agreement with which is an integral part of this Agreement. The person acting as the escrow agent must be agreed between ASSIGNOR and ASSIGNOR in advance by entering into an appropriate tripartite agreement between ASSIGNOR, ASSIGNEE and the escrow agent.

The Parties agreed that a prerequisite of the agreement between ASSIGNEE and the lawyer (lawyers) should be the following condition: "The lawyer (lawyers) who received all or part of the debt specified in clause 1.1 of this Agreement must, within 5 days, transfer the amount received to the escrow agent, whom ASSIGNEE will specify and with whom ASSIGNEE and ASSIGNOR have entered into a tripartite agreement".

1.8. Payment in accordance with clause 1.6. of this Agreement shall be carried out immediately after the refund or collection of the debt amount from DEBTOR/DEBTORS in part or in full.

1.9. ASSIGNEE is obliged to notify DEBTOR/DEBTORS in writing about the assignment of the right of claim.

1.10. All disputes and disagreements that may arise between the Parties on issues related to this Agreement will be resolved through negotiations.

If it is impossible to resolve the dispute through negotiations, the Parties have agreed to consider such disputes at the location of the defendant.

1.11. ASSIGNOR has the right, without the consent of ASSIGNEE, to conclude in the interests of the latter a Contract with a Lawyer (Lawyers) and pay for their services in full or in part, as well as receive a report on the work performed directly from them.

1.12. This Agreement contains an exhaustive list of agreements between the Parties regarding its essential and other conditions, which are assumed by the Parties as necessary.

1.13. Any change to this Agreement must be made in writing and agreed by the Parties.

1.14. The term of this Agreement is established from the date of its signature by both Parties and is valid until March 01, 2021. In this case, the term of the Agreement may be extended on the basis of a written agreement between the Parties.

1.15. In case of termination of this Agreement, ASSIGNEE must return within a month the original documents received from ASSIGNOR in order to fulfill the terms of this Agreement.

## Address and details of the Parties

**ASSIGNOR**                                    **ASSIGNEE**

**Kovzel Mykola**                               **Oleg Zhukovsky**
Identification code ███ 3318
Passport series KA No ███ 823, issued on 14.10.1997 by
Zaliznychnyi RV UMVS of Ukraine in Lviv region
Staronavodnitska str., 13, apt.3, Kyiv, 01015, Ukraine

_[signature] / **M. Kovzel** /                   14.09 [signature] / **Oleg Zhukovsky** /
Date:                                           Date:

Переклад тексту цього документа з російської мови на англійську мову виконано перекладачем бюро перекладів «Анна Світ» Горбик Майєю Євгеніївною.

(адреса: Україна, 03049, Київ, проспект Повітрофлотський 10, офіс 23, тел. 592-29-11)

This translation of the document from the Russian language into the English language is done by the translator of the Translation Office "Anna Svit"

(address: Ukraine, 03049, Kyiv, Povitroflotsky Avenue, 10, office 23, tel. 592-29-11)

 Mrs. Gorbyk Maiia

Підпис/Signature:_____ .

Директор ПП БП „Анна Світ" Ліпов Ю. І.
Director of PE TO "Anna Svit" Mr. Y.I. Lipov





Прошито, пронумеровано та скріплен
печаткою_____ 4 _____ аркуші/.

Sealed, numbered_____ 4 _____ p/ages.

## ДОГОВОР
### уступки права требования (Цессии)

г. Киев, Украина                                                    «14» сентября 2020г.

Ковзель Николай, идентификационный код ▮▮▮3318, паспорт гражданина Украины серии КА ▮▮823, выдан Зализничным РО УМВД Украины во Львовской области, 14.10.1997г., именуемый в дальнейшем «ЦЕДЕНТ», с одной стороны,

и   гражданин   Соединенных   Штатов   Америки   Олег   Жуковский,   адрес _____, именуемый в дальнейшем   «ЦЕССИОНАРИЙ»,   с   другой   стороны,   заключили   настоящий   договор   о нижеследующем.

1.1 ЦЕДЕНТ передаёт, а ЦЕССИОНАРИЙ принимает право требования ЦЕДЕНТА к АО «БРОКБИЗНЕСБАНК», Национальному банку Украины, Государству Украина (далее по тексту – ДОЛЖНИК/ДОЛЖНИКИ) на денежные средства в размере и по состоянию на 14.09 2020г., а именно:

1) 4 185 204,00 долларов США - сумму основного долга АО «БРОКБИЗНЕСБАНК» перед ЦЕДЕНТОМ по невозвращенному вкладу;

2) проценты на вклады ЦЕДЕНТА в АО «БРОКБИЗНЕСБАНК»  за период с 01.01.2014 по момент выплаты их ДОЛЖНИКОМ/ДОЛЖНИКАМИ;

3) возмещения 3% годовых, начисленные в связи невозвращением ЦЕДЕНТУ вкладов и процентов   по   вкладам   за   период   с   01.01.2014   по   момент   выплаты   их ДОЛЖНИКОМ/ДОЛЖНИКАМИ;

4) возмещения 3% пени, начисленные за каждый день невыполнения условий договора;

5) упущенная выгода;

6) моральный ущерб.

Общая сумма Договора уступки права требования составляет 4 185 204,00 долларов США.

ЦЕДЕНТ также передает ЦЕССИОНАРИЮ в полном объеме право требования у ДОЛЖНИКА/ДОЛЖНИКОВ долга, который возникнем в будущем.

Право требования ЦЕДЕНТА к ДОЛЖНИКУ/ДОЛЖНИКАМ на сумму основного долга в размере 4 185 204,00 долларов США долара, что эквивалентно 53 277 679,50 грн., подтверждается решением исполнительной дирекции Фонда гарантирования вкладов физических лиц №226/14 от 16.10.2014г. об утверждении реестра акцептованных требований кредиторов АО "Брокбизнесбанк", согласно которого денежные требования Ковзеля Николая Олеговича к АО "Брокбизнесбанк" были акцептованы и должны были быть удовлетворены в четвертую очередь, согласно уведомления Фонда гарантирования вкладов физических лиц №4/3670-кр от 28.10.2014г.

1.2. Указанные в пункте 1.1 настоящего Договора права требования возникли в связи с заключением Ковзелем Николаем Олеговичем и АО "Брокбизнесбанк" договора банковского вклада №323-01-13-840 от 11.01.2013г.

1.3. На момент заключения настоящего Договора обязательства по возврату денежных средств ДОЛЖНИКОМ/ДОЛЖНИКАМИ исполнены не были.

1.4. Право требования к ДОЛЖНИКУ/ДОЛЖНИКАМ переходит к ЦЕССИОНАРИЮ в полном объёме с момента заключения настоящего Договора. ЦЕДЕНТ несет ответственность за достоверность передаваемых в соответствии с настоящим Договором документов, другой информации и гарантирует наличие и передачу всех уступленных ЦЕССИОНАРИЮ требований.

1.5. ЦЕССИОНАРИЙ, который приобрел право требования, согласно настоящего Договора не имеет право переуступать (перепродавать) право требования в полном объеме или частично. Любая уступка или делегирование в нарушение п. 1.5. договора являются недействительными.

ЦЕССИОНАРИЙ не может быть единым (эксклюзивным) лицом, которое имеет право требования долга, указанного в пункте 1.1 данного Договора, и может быть одним из нескольких лиц, которым ЦЕДЕНТ передал право требование одного и того же долга. В случае полной или частичной уступки права требования долга, указанного в пункте 1.1 данного Договора, ЦЕДЕНТ обязан уведомить об этом ЦЕССИОНАРИЯ.

ЦЕССИОНАРИЙ имеет равные права с третьими лицами, которым ЦЕДЕНТОМ также было передано право требования долга, указанного в пункте 1.1 данного Договора.

1.6. Передача права требования является платной. Стоимость передачи права требования составляет 4 143 351,96 (четыре миллиона сто сорок три тысячи триста пятьдесят один доллар) долларов США.

В случае, если ЦЕССИОНАРИЙ взыщет с ДОЛЖНИКА/ДОЛЖНИКОВ другие (дополнительные) суммы (проценты по вкладу; 3% годовых, начисленные в связи невозвращением

ЦЕДЕНТУ вкладов и процентов по вкладам; неустойка, материальный и моральный ущерб и другого рода санкции или выплаты), на которые возникли или возникнут в будущем на основании уже переданных прав по этому Договору, и на какие имеет право ЦЕДЕНТ, ЦЕССИОНАРИЮ полагается 0,5% от всех дополнительно взысканных сумм, а также 0,5% от всех дополнительно взысканных сумм на оплату услуг адвокатов.

1.7. Взыскание средств с ДОЛЖНИКА и оплата по настоящему Договору осуществляется ЦЕССИОНАРИЕМ ЦЕДЕНТУ только при участии агента условного депонирования, договор с которым является неотъемлемой частью этого Договора. Лицо, выполняющее функции агента по условному депонированию, должно быть согласовано ЦЕССИОНАРИЕМ с ЦЕДЕНТОМ заранее, путем заключения соответствующего трехстороннего соглашения между ЦЕДЕНТОМ, ЦЕССИОНАРИЕМ и агентом условного депонирования.

Стороны согласовали, что обязательным условием договора ЦЕССИОНАРИЯ с адвокатом (адвокатами) должно быть такое условие: «Адвокат (адвокаты) получивший полностью или частично долг, указанный в пункте 1.1 данного Договора, должен на протяжении 5 дней перечислить полученную сумму агенту по условному депонированию, которого укажет ЦЕССИОНАРИЙ и с которым у ЦЕССИОНАРИЯ и ЦЕДЕНТА заключен трехсторонний договор.

1.8. Оплата согласно п.1.6. настоящего Договора осуществляется незамедлительно после возврата или взыскания с ДОЛЖНИКА/ДОЛЖНИКОВ полной или частичной суммы долга.

1.9. ЦЕССИОНАРИЙ обязуется письменно уведомить ДОЛЖНИКА/ДОЛЖНИКОВ о состоявшейся уступке права требования.

1.10. Все споры и разногласия, которые могут возникнуть между Сторонами по вопросам, связанным с настоящим Договором, будут разрешаться путем переговоров.

В случае невозможности урегулирования разногласий путём переговоров, Стороны пришли к соглашению рассматривать такие споры по месту нахождения ответчика.

1.11. ЦЕДЕНТ имеет право без согласования с ЦЕССИОНАРИЕМ, заключать в интересах последнего Договор с Адвокатом (Адвокатами) и оплачивать их услуги полностью или частично, а также получать непосредственно от них отчет о выполненной работе.

1.12. Настоящий Договор содержит исчерпывающий перечень договорённостей Сторон относительно существенных и иных его условий, подразумевающихся Сторонами как необходимые.

1.13. Любое изменение этого Договора должно быть оформлено в письменной форме и согласовано Сторонами.

1.14. Срок действия настоящего Договора устанавливается с момента его подписания обеими Сторонами и действует до 01 марта 2021 года. При этом срок действия Договора может быть продлен на основании письменной договоренности сторон.

1.15. В случае прекращения данного Договора, ЦЕССИОНАРИЙ на протяжении месяца должен вернуть оригиналы документов, полученных от ЦЕДЕНТА, для выполнения условий данного Договора.

### Адреса и реквизиты Сторон

**ЦЕДЕНТ**                                    **ЦЕССИОНАРИЙ**

**Ковзель Николай** Идентификационный код   Олег Жуковский
3318
Паспорт серии КА 823, выдан
Зализничным РО УМВД Украины во
Львовской области, 14.10.1997г.
ул. Старонаводницкая, 13, кв.3, г.Киев,
01015, Украина

_____ /Н.Ковзель/                          1409 _____ /Олег Жуковский/
Дата:                                        Дата:

2

## AGREEMENT
### on assignment of debt claim (Cessation)

**Kyiv, Ukraine**                                                                                          **September 14, 2020**

**Didylivskyi Vitalii,** identification code ████ 5916, passport of the citizen of Ukraine series MC No. ███ 470, issued on 11.01.2000 by Ternopilskyi RV UMVS of Ukraine in Ternopil region, hereinafter referred to as "ASSIGNOR", on the one part,

and a *citizen of the United States of America Oleg Zhukovsky*, address _____, hereinafter referred to as "ASSIGNEE", on the other part, have entered into this agreement as follows.

1.1 ASSIGNOR transfers and ASSIGNEE accepts the ASSIGNOR's right to claim against JSC "BROKBUSINESSBANK", the National Bank of Ukraine, the State of Ukraine (hereinafter referred to as DEBTOR/DEBTORS) for funds in the amount of and as of 14.09.2020, in particular:

1) 109 975,86 US dollars - the amount of the principal debt of JSC "BROKBUSINESSBANK" to ASSIGNOR on non-refunded deposit;

2) reimbursement of 3% per annum accrued in connection with the failure to refund deposits and interest on deposits to ASSIGNOR for the period from 01.01.2014 till the date of their payment by DEBTOR/DEBTOR;

3) lost profits;

4) moral damage.

The total amount of the Agreement on assignment of debt claim is 109 975,86 US dollars.

ASSIGNOR also transfers to ASSIGNEE in full the right to claim debt from DEBTOR/DEBTORS that will arise in the future.

ASSIGNORS's right to claim against DEBTOR/DEBTORS for the principal debt amount of 109 975,86 US dollars, which is equivalent to 1 298 102,37 UAH, is confirmed by the decision of the Executive Directorate of the Individuals Deposit Guarantee Fund No.226/14 dated 16.10.2014 on approval of the register of accepted claims of creditors of JSC "BROKBUSINESSBANK", according to which the monetary claims of Didylivskyi Vitalii Myroslavovych against JSC "BROKBUSINESSBANK" were accepted and had to be satisfied on the fourth priority basis, according to the notification of the Individuals Deposit Guarantee Fund No.29-v/к dated 16.02.2015.

1.2. The rights of claim specified in clause 1.1 of this Agreement arose in connection with the conclusion of investment bank deposit agreement No.D_150676669 dated 23.12.2013 between Didylivskyi Vitalii Myroslavovych and JSC "Brokbusinessbank".

1.3. At the time of conclusion of this Agreement, obligations for refunding the funds by DEBTOR/DEBTORS have not been fulfilled.

1.4. The right to claim against DEBTOR/DEBTORS is transferred to ASSIGNEE in full from the date of the conclusion of this Agreement. ASSIGNOR is responsible for the accuracy of documents and other information transferred in accordance with this Agreement and guarantees the availability and transfer of all claims assigned to ASSIGNEE.

1.5. ASSIGNEE, which has acquired the right to claim, according to this Agreement, does not have the right to assign (resell) the right to claim in full or in part. Any assignment or delegation in violation of clause 1.5. of the agreement is invalid.

ASSIGNEE cannot be a single (exclusive) person, which has the right to claim the debt specified in clause 1.1 of this Agreement, and can be one of several persons to whom ASSIGNOR has transferred the right to claim the same debt. In case of full or partial assignment of the right to claim the debt specified in clause 1.1 of this Agreement, ASSIGNOR is obliged to notify ASSIGNEE hereof.

ASSIGNEE has equal rights with third parties to whom ASSIGNOR has also transferred the right to claim the debt specified in clause 1.1 of this Agreement.

1.6. The transfer of the right to claim is a paid transfer. The cost of transfer of the right to claim is 108 876,10 (one hundred eight thousand eight hundred seventy six) US dollars.

In the event that ASSIGNEE collects other (additional) amounts from DEBTOR/DEBTORS (interest on the deposit; 3% per annum, accrued in connection with the failure to refund deposits and interest on deposits to ASSIGNOR; forfeit, material and moral damage and other sanctions or payments), which have arisen or will arise in the future on the basis of the rights transferred already under this Agreement, and to which ASSIGNOR has the right, ASSIGNEE is entitled to 0,5% of all additionally

collected amounts, as well as 0,5% of all additionally collected amounts for lawyers' fees.

1.7. The collection of funds from DEBTOR and payment under this Agreement shall be carried out by ASSIGNEE to ASSIGNOR only with the participation of the escrow agent, the agreement with which is an integral part of this Agreement. The person acting as the escrow agent must be agreed between ASSIGNOR and ASSIGNOR in advance by entering into an appropriate tripartite agreement between ASSIGNOR, ASSIGNEE and the escrow agent.

The Parties agreed that a prerequisite of the agreement between ASSIGNEE and the lawyer (lawyers) should be the following condition: "The lawyer (lawyers) who received all or part of the debt specified in clause 1.1 of this Agreement must, within 5 days, transfer the amount received to the escrow agent, whom ASSIGNEE will specify and with whom ASSIGNEE and ASSIGNOR have entered into a tripartite agreement".

1.8. Payment in accordance with clause 1.6. of this Agreement shall be carried out immediately after the refund or collection of the debt amount from DEBTOR/DEBTORS in part or in full.

1.9. ASSIGNEE is obliged to notify DEBTOR/DEBTORS in writing about the assignment of the right of claim.

1.10. All disputes and disagreements that may arise between the Parties on issues related to this Agreement will be resolved through negotiations.

If it is impossible to resolve the dispute through negotiations, the Parties have agreed to consider such disputes at the location of the defendant.

1.11. ASSIGNOR has the right, without the consent of ASSIGNEE, to conclude in the interests of the latter a Contract with a Lawyer (Lawyers) and pay for their services in full or in part, as well as receive a report on the work performed directly from them.

1.12. This Agreement contains an exhaustive list of agreements between the Parties regarding its essential and other conditions, which are assumed by the Parties as necessary.

1.13. Any change to this Agreement must be made in writing and agreed by the Parties.

1.14. The term of this Agreement is established from the date of its signature by both Parties and is valid until March 01, 2021. In this case, the term of the Agreement may be extended on the basis of a written agreement between the Parties.

1.15. In case of termination of this Agreement, ASSIGNEE must return within a month the original documents received from ASSIGNOR in order to fulfill the terms of this Agreement.

## Address and details of the Parties

**ASSIGNOR**                                            **ASSIGNEE**

**Didylivskyi Vitalii**                                 **Oleg Zhukovsky**
identification code     5916
passport of the citizen of Ukraine series MC No.    470,
issued on 11.01.2000 by Ternopilskyi RV UMVS of
Ukraine in Ternopil region
Heroyiv Stalinhrada ave., 8, block 3, apt. 33, Kyiv,
04210, Ukraine

 [signature] / **V.Didylivskyi** /                     14.09 [signature] / **Oleg Zhukovsky** /
Date:                                                  Date:

Переклад тексту цього документа з російської мови на англійську мову виконано перекладачем бюро перекладів «Анна Світ» Горбик Майєю Євгеніївною.
(адреса: Україна, 03049, Київ, проспект Повітрофлотський 10, офіс 23, тел. 592-29-11)
This translation of the document from the Russian language into the English language is done by the translator of the Translation Office "Anna Svit"
(address: Ukraine, 03049, Kyiv, Povitroflotsky Avenue, 10, office 23, tel. 592-29-11)
 Mrs. Gorbyk Maiia

Підпис/Signature: _____ .

Директор ПП БП „Анна Світ" Ліпов Ю. І.
Director of PE TO "Anna Svit" Mr. Y.I. Lipov





Прошито, пронумеровано та скрі[ ]лено
печаткою_____ 4 _____ арк[ ]шів.

Sealed, numbered_____ 4 _____ p[ ]ges.

## ДОГОВОР
### уступки права требования (Цессии)

г. Киев, Украина                                                    «14» сентября 2020г.

      **Дидыливский Виталий**, идентификационный код ████5916, паспорт гражданина Украины серии МС №██70, выдан Тернопольским РО УМВД Украины в Тернопольской области, 11.01.2000г., именуемый в дальнейшем «ЦЕДЕНТ», с одной стороны,
      и *гражданин Соединенных Штатов Америки Олег Жуковский*, адрес _____, именуемый в дальнейшем «ЦЕССИОНАРИЙ», с другой стороны, заключили настоящий договор о нижеследующем.

      1.1 ЦЕДЕНТ передаёт, а ЦЕССИОНАРИЙ принимает право требования ЦЕДЕНТА к АО «БРОКБИЗНЕСБАНК», Национальному банку Украины, Государству Украина (далее по тексту – ДОЛЖНИК/ДОЛЖНИКИ) на денежные средства в размере и по состоянию на 14.09.2020г., а именно:
      1) 109 975,86 долларов США - сумму основного долга АО «БРОКБИЗНЕСБАНК» перед ЦЕДЕНТОМ по невозвращенному вкладу;
      2) возмещения 3% годовых, начисленные в связи невозвращением ЦЕДЕНТУ вкладов и процентов по вкладам за период с 01.01.2014 по момент выплаты их ДОЛЖНИКОМ/ДОЛЖНИКАМИ;
      3) упущенная выгода;
      4) моральный ущерб.
      Общая сумма Договора уступки права требования составляет 109 975,86 долларов США.
      ЦЕДЕНТ также передает ЦЕССИОНАРИЮ в полном объеме право требования у ДОЛЖНИКА/ДОЛЖНИКОВ долга, который возникнем в будущем.
      Право требования ЦЕДЕНТА к ДОЛЖНИКУ/ДОЛЖНИКАМ на сумму основного долга в размере 109 975,86 долларов США доларов, что эквивалентно 1 298 102,37 грн., подтверждается решением исполнительной дирекции Фонда гарантирования вкладов физических лиц №226/14 от 16.10.2014г. об утверждении реестра акцептованных требований кредиторов АО "Брокбизнесбанк", согласно которого денежные требования Дидыливского Виталия Мирославовича к АО "Брокбизнесбанк" были акцептованы и должны были быть удовлетворены в четвертую очередь, согласно уведомления Фонда гарантирования вкладов физических лиц №29-в/к от 16.02.2015г.
      1.2. Указанные в пункте 1.1 настоящего Договора права требования возникли в связи с заключением Дидыливским Виталием Мирославовичем и АО "Брокбизнесбанк" договора банковского вклада (депозита) №D_150676669 от 23.12.2013г.
      1.3. На момент заключения настоящего Договора обязательства по возврату денежных средств ДОЛЖНИКОМ/ДОЛЖНИКАМИ исполнены не были.
      1.4. Право требования к ДОЛЖНИКУ/ДОЛЖНИКАМ переходит к ЦЕССИОНАРИЮ в полном объёме с момента заключения настоящего Договора. ЦЕДЕНТ несет ответственность за достоверность передаваемых в соответствии с настоящим Договором документов, другой информации и гарантирует наличие и передачу всех уступленных ЦЕССИОНАРИЮ требований.
      1.5. ЦЕССИОНАРИЙ, который приобрел право требования, согласно настоящего Договора не имеет право переуступать (перепродавать) право требования в полном объеме или частично. Любая уступка или делегирование в нарушение п. 1.5. договора являются недействительны.
      ЦЕССИОНАРИЙ не может быть единым (эксклюзивным) лицом, которое имеет право требования долга, указанного в пункте 1.1 данного Договора, и может быть одним из нескольких лиц, которым ЦЕДЕНТ передал право требование одного и того же долга. В случае полной или частичной уступки права требования долга, указанного в пункте 1.1 данного Договора, ЦЕДЕНТ обязан уведомить об этом ЦЕССИОНАРИЯ.
      ЦЕССИОНАРИЙ имеет равные права с третьими лицами, которым ЦЕДЕНТОМ также было передано право требования долга, указанного в пункте 1.1 данного Договора.
      1.6. Передача права требования является платной. Стоимость передачи права требования составляет 108 876,10 (сто восемь тысяч восемьсот семьдесят шесть долларов) долларов США.
      В случае, если ЦЕССИОНАРИЙ взыщет с ДОЛЖНИКА/ДОЛЖНИКОВ другие (дополнительные) суммы (проценты по вкладу; 3% годовых, начисленные в связи невозвращением ЦЕДЕНТУ вкладов и процентов по вкладам; неустойка, материальный и моральный ущерб и другого рода санкции или выплаты), на которые возникли или возникнут в будущем на основании уже

переданных прав по этому Договору, и на какие имеет право ЦЕДЕНТ, ЦЕССИОНАРИЮ полагается 0,5% от всех дополнительно взысканных сумм, а также 0,5% от всех дополнительно взысканных сумм на оплату услуг адвокатов.

1.7. Взыскание средств с ДОЛЖНИКА и оплата по настоящему Договору осуществляется ЦЕССИОНАРИЕМ ЦЕДЕНТУ только при участии агента условного депонирования, договор с которым является неотъемлемой частью этого Договора. Лицо, выполняющее функции агента по условному депонированию, должно быть согласовано ЦЕССИОНАРИЕМ с ЦЕДЕНТОМ заранее, путем заключения соответствующего трехстороннего соглашения между ЦЕДЕНТОМ, ЦЕССИОНАРИЕМ и агентом условного депонирования.

Стороны согласовали, что обязательным условием договора ЦЕССИОНАРИЯ с адвокатом (адвокатами) должно быть такое условие: «Адвокат (адвокаты) получивший полностью или частично долг, указанный в пункте 1.1 данного Договора, должен на протяжении 5 дней перечислить полученную сумму агенту по условному депонированию, которого укажет ЦЕССИОНАРИЙ и с которым у ЦЕССИОНАРИЯ и ЦЕДЕНТА заключен трехсторонний договор.

1.8. Оплата согласно п.1.6. настоящего Договора осуществляется незамедлительно после возврата или взыскания с ДОЛЖНИКА/ДОЛЖНИКОВ полной или частичной суммы долга.

1.9. ЦЕССИОНАРИЙ обязуется письменно уведомить ДОЛЖНИКА/ДОЛЖНИКОВ о состоявшейся уступке права требования.

1.10. Все споры и разногласия, которые могут возникнуть между Сторонами по вопросам, связанным с настоящим Договором, будут разрешаться путем переговоров.

В случае невозможности урегулирования разногласий путём переговоров, Стороны пришли к соглашению рассматривать такие споры по месту нахождения ответчика.

1.11. ЦЕДЕНТ имеет право без согласования с ЦЕССИОНАРИЕМ, заключать в интересах последнего Договор с Адвокатом (Адвокатами) и оплачивать их услуги полностью или частично, а также получать непосредственно от них отчет о выполненной работе.

1.12. Настоящий Договор содержит исчерпывающий перечень договорённостей Сторон относительно существенных и иных его условий, подразумевающихся Сторонами как необходимые.

1.13. Любое изменение этого Договора должно быть оформлено в письменной форме и согласовано Сторонами.

1.14. Срок действия настоящего Договора устанавливается с момента его подписания обеими Сторонами и действует до 01 марта 2021 года. При этом срок действия Договора может быть продлен на основании письменной договоренности сторон.

1.15. В случае прекращения данного Договора, ЦЕССИОНАРИЙ на протяжении месяца должен вернуть оригиналы документов, полученных от ЦЕДЕНТА, для выполнения условий данного Договора.

### Адреса и реквизиты Сторон

**ЦЕДЕНТ**

**ЦЕССИОНАРИЙ**

Дидыливский Виталий
идентификационный код ████5916
паспорт гражданина Украины серии МС
№ ███470, выдан Тернопольским РО УМВД
Украины в Тернопольской области,
11.01.2000г.
пр-т. Героев Сталинграда, 8, копр.3, кв.33,
г.Киев, 04210, Украина

Олег Жуковский

_____ /В. Дидыливский/
Дата:

14.09   _____ /Олег Жуковский/
Дата: