# Exhibit B



HAROLD E. PATRICOFF
PARTNER
Shutts & Bowen LLP
200 South Biscayne Boulevard
Suite 4100
Miami, FL 33131
DIRECT (305) 379-9189
FAX (305) 347-7889
EMAIL HPatricoff@shutts.com

October 29, 2020

**VIA DHL**
Kyrylo Shevchenko, Chairman
National Bank of Ukraine
9 Instytutska St.
Kyiv, 01601
Ukraine

Dear Mr. Shevchenko,

Our firm Shutts & Bowen LLP represents Oleg Zhukovskiy (hereinafter referred to as the "Assignee"), who is the assignee of certain rights to recover deposits, described in paragraphs 1 through 4 below (collectively, the "Invested Funds"). In summary, we understand that the deposits were made by the assignors, ZUKK Trading Limited, a Cyprus company ("Zukk"), Intertransgroup LLC ("Intertrans"), Nikolay Kovzel ("Mr. Kovzel") and Vitaly Didylivsky ("Mr. Didylivsky") (collectively, the "Investors") into JSB Brokbusinessbank ("Brokbusinessbank"). On September 14, 2020, the Investors assigned all of their rights to pursue claims to recover the Invested Funds (together with all other rights to recover the interest, penalties, and other damages in connection with the Invested Funds) to Oleg Zhukovskiy, for good and valuable consideration.

## Background for Investments and Dispute

After Brokbusinessbank was placed into insolvency in 2014, the Invested Funds were funneled out of the bank with the knowledge of and/or assistance of the Bank of Ukraine, through improper and illegal means, to the great detriment of the Investors, and as a result, those funds remain due and owing to the Investors, together with all applicable interest, penalties, and other damages.

Specifically, between 2012 and 2013, the Investors deposited the US Dollar equivalent of $102,207,909.46[1] in funds with Brokbusinessbank, pursuant to deposit agreements which required Brokbusinessbank to hold the deposits in exchange for payment of certain interest to the Investors. On September 14, 2020 the legal claims regarding the Invested Funds and the damages associated with the Invested Funds, were transferred and assigned to Mr. Oleg Zhukovskiy through several

---

[1] All references in this letter to "$" relate to United States Dollars, unless otherwise indicated.

Mr. Shevchenko
October 29, 2020
Page 2

assignments (copies of which can be provided to you upon request). Thereafter, Mr. Zhukovskiy retained counsel to pursue those legal claims, including our firm, Shutts and Bowen, LLP.

This letter shall serve as our demand for the Bank of Ukraine to return the Invested Funds within 20 days of your receipt of this letter, or in any event, no later than November 20, 2020 (together with applicable interest, costs, and other damages, pursuant to Ukrainian law, Florida law, and any other applicable laws) which the National Bank of Ukraine is liable for, in the amount totaling **$392,868,519.46** comprising the principal amount of the Invested Funds, together with interest, lost profits, statutory damages, and other damages as set forth herein (through September 14, 2020).

### Liquidation of Brokbusinessbank

Brokbusinessbank was placed into liquidation in 2014 (and ultimately liquidated in 2019), and the National Bank of Ukraine was required by Ukrainian law to take certain actions to ensure the security of the deposits at the bank. However, it appears that there are a number of improprieties, and failures by the National Bank of Ukraine including, among other things, (i) failures in supervising the liquidation of Brokbusinessbank, (ii) intentional participation in improper activities wherein the funds of Brokbusinessbank were wrongfully transferred and diverted to third-parties to the detriment of creditors; (iii) participation in, and/or acquiesced in, certain other illegal activities in connection with money laundering and the improper withdrawal of Brokbusinessbank assets before the liquidation was completed; and (iv) other wrongful actions and inactions by the National Bank of Ukraine, all of which proximately caused significant damages to the creditors of Brokbusinessbank, including the Investors. As a direct result of the wrongful actions and inactions of the National Bank of Ukraine, the creditors of Brokbusinessbank were deprived of the opportunity by the actions of the Bank of Ukraine and other coconspirators who participated in the raiding and other illegal conduct resulting in the taking of the accounts at Brokbusinessbank, to obtain the return of their deposits and investments from Brokbusinessbank, which was improperly and illegally liquidated.

### The Investments

Instead of returning the funds maintained by Brokbusinessbank to the creditors and investors of the bank, it is clear that the National Bank of Ukraine confiscated the funds for its own use and/or for the use of the country of Ukraine. As noted above, Mr. Zhukovskiy has been assigned all rights to pursue the damages associated with the Invested Funds, and the wrongful actions by the National Bank of Ukraine to the detriment of the Investors. The claims associated with the Invested Funds are summarized as follows:

1. ***Zukk Investments***

Pursuant to an Assignment Agreement between Mr. Zhukovskiy and Zukk dated September 14, 2020, Mr. Zhukovskiy was assigned the benefit of the rights of claim arising out of the following agreements which were entered into by Zukk with Brokbusinessbank:

Mr. Shevchenko
October 29, 2020
Page 3

 (i) No. 01-07-2010 dated 07.07.2010 for the amount of $15,000,000.00;
 (ii) No. 02-07-2010 dated 07.07.2010 for the amount of $15,000,000.00;
 (iii) No. 03-07-2010 dated 07.07.2010 for the amount of $15,000,000.00;
 (iv) No. 04-07-2010 dated 07.07.2010 for the amount of $15,000,000.00; and
 (v) No. 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 dated October 29, 2012 for the amount of $35,000,000.00.

These investments, totaling $95,000,000.00 are collectively referred to as the "**Zukk Investments**." Pursuant to the applicable Ukrainian law, Florida law, and any other applicable laws, we understand that Zukk, and consequently, the Assignee, is entitled to $95,000,000.00 for the return of the principal balance of its investments into Brokbusinessbank; $73,231,711.39 in connection with the interest under the applicable deposit agreements; $25,922,287.07 in connection with 3% damages based on Ukrainian CCU Article 625 (including calculations of 3% annually, and *interest on interest* as set forth in Article 625 of the Ukrainian CCU on certain deposits); and $63,310,817.20. As of September 14, 2020, the damages associated with the Zukk Investments total **$257,464,815.66**.

2. *Intertransgroup Investments*

 Pursuant to an Assignment Agreement between Mr. Zhukovskiy and Intertransgroup dated September 14, 2020, Mr. Zhukovskiy was assigned the benefit of the rights of claim arising out of the following agreements which were entered into by Intertransgroup with Brokbusinessbank:

 (i) Bank deposit agreement No. 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 dated December 27, 2012. This includes deposits in the amount of $1,500,000.00, which were confirmed by payment orders: No. 104 dated December 27, 2012, No. 6 dated January 25, 2013, No. 12 dated February 14, 2013, No. 23 dated March 26, 2013, and No. 115 dated December 26, 2013;
 (ii) Bank deposit agreement No. 28-03-2013 dated 03/04/2013 on the placement of funds in the amount of UAH 38,000,000.00, the amount is confirmed by payment order No. 19 dated April 04, 2013;
 (iii) Contract No. 22479 dated 02.06.2011 in the amount of UAH 586,880.65;
 (iv) Agreement No. 105355 dated November 12, 2012;
 (v) Agreement No. 105354 dated November 12, 2012; and
 (vi) Agreement No. KCKP / 20 dated August 12, 2010.

These investments, totaling the USD equivalent of $2,892,705.46 are collectively referred to as the "Intertransgroup Investments." Pursuant to the applicable Ukrainian law, Florida law, and any other applicable laws, we understand that Intertransgroup, and consequently, the Assignee, is entitled to $2,892,705.46 for the return of the principal balance of its investments into Brokbusinessbank; $2,539,138.31 in interest (lost profits); $999,942.91 in connection with damages based on Ukrainian CCU Article 625 (including calculations of 3% annually, and *interest on interest* as set forth in Article 625 of the Ukrainian CCU on certain deposits); and $2,045,934.10

Mr. Shevchenko
October 29, 2020
Page 4

in losses due to inflation (as to UAH currency accounts). As of September 14, 2020, the damages associated with the Intertransgroup Investments total **$8,477,720.78**.

3. *Kovzel Investment*

Pursuant to an Assignment Agreement between Mr. Zhukovskiy and Mr. Kovzel dated September 14, 2020, Mr. Zhukovskiy was assigned the benefit of the rights of claim arising out of the following agreement which was entered into by Mr. Kovzel and Brokbusinessbank: the Bank deposit agreement No. 323-01-13-840 dated January 11, 2013, totaling $4,185,204.00 in funds invested by Mr. Kovzel into Brokbusinessbank (the "Kovzel Investment").

Pursuant to the applicable Ukrainian law, Florida law, and any other applicable laws, we understand that Mr. Kovzel, and consequently, the Assignee, is entitled to $4,185,204.00 for the return of the principal balance[2] of his deposits into Brokbusinessbank; $2,953,028.57 in connection with the interest under the applicable deposit agreements; $822,134.60 in connection with 3% damages based on Ukrainian CCU Article 625; $113,199,866.20 penalty of 3% *of daily interest on interest* based on the failure to return the interest timely (based on the Ukrainian Consumer Protection Statute); an amount in excess of $2,738,493.74 for lost profits, and $2,738,493.74 in moral damages under Ukrainian law, Florida law, and any other applicable laws. As of September 14, 2020, the damages associated with the Kovzel Investment total **$126,637,220.85**.

4. *Didylivsky Investment*

Pursuant to an Assignment Agreement between Mr. Zhukovskiy and Mr. Didylivsky dated September 14, 2020, Mr. Zhukovskiy was assigned the benefit of the rights of claim arising out of the following agreement which was entered into by Mr. Didylivsky and Brokbusinessbank: the Bank deposit agreement No. D_150676669 dated December 23, 2013, totaling $130,000.00 in funds invested by Mr. Didylivsky into Brokbusinessbank, at an annual interest of 11.5% (the "Didylivsky Investment").

Pursuant to the applicable Ukrainian law, Florida law, and any other applicable laws, we understand that Mr. Didylivsky, and consequently, the Assignee, is entitled to $109,975.86 for the return of the principal balance (after considering the partial payment from the Fund in the amount of $20,024.93[3]); $83,914.27 in connection with the interest under the deposit agreement; $21,906.08 in connection with damages based on Ukrainian CCU 625 (3% per year); and $72,965.96 in moral damages. As of September 14, 2020, the damages associated with the Didylivsky Investment total **$288,762.17**.

---

[2] This is the principal amount remaining outstanding after the Fund refunded to Mr. Kovzel the amount of UAH 200,000.00 (or approximately $20,024.93, at the exchange rate on the date of payment for USD 1 = UAH 9.98755).

[3] On May 7, 2014, the Fund refunded to Mr. Didylivsky the amount of UAH 200,000.00 (or approximately $20,024.93, which is at the exchange rate on the date of payment for USD 1 = UAH 9.98755).

Mr. Shevchenko
October 29, 2020
Page 5

We understand that despite repeated demands by the Investors, whether directly or by others on their behalf, the National Bank of Ukraine has failed to return the investments, interest, and other damages described above in paragraphs (1) through (4). As of September 14, 2020, these damages total **$392,868,519.46**.

### Brokbusinessbank Declared Insolvent

On February 28, 2014 JSB Brokbusinessbank was declared insolvent by the Board of the National Bank of Ukraine No. 107. As a result, the Investors were forced to submit certain claims to the Executive Directorate of the Individual Deposits Guarantee Fund (the "Fund") for recognition as part of the liquidation process. Although the Investors' investments were recognized by the Fund, the Investors' funds were not returned because funds were already illegally funneled out of Brokbusinessbank, by a criminal organization led by Mr. Sergey Kurchenko, with the assistance of the National Bank of Ukraine. For purposes of this letter, we have summarized the following letters which recognized the principal value of the Invested Funds as follows.

As set forth in the November 6, 2014 letter from Brokbusinessbank (No. 10898 / 010-04), on October 16, 2014, by Decision No. 226/14, Zukk's monetary investments in Brokbusinessbank were recognized and accepted as claims by the Fund. As accepted by the Fund, Zukk's investments totaled UAH 1,141,957,338.19. The principal value of Intertransgroup investments were recognized and accepted, totaling UAH 56,640,150.23. These investments were recognized by a letter from Brokbusinessbank dated September 9, 2015, No. 7/35-zkr. The principal value of Mr. Kovzel's investments were recognized and accepted, totaling UAH 53,277,679.50. These investments were recognized by a letter from Brokbusinessbank dated October 28, 2014, No. 4/3670-kr. The principal value of Mr. Didylivsky's investments were recognized and accepted, totaling UAH 1,298,102.37. This is evidenced by an extract from the list (register) of creditors' claims of Brokbusinessbank dated October 16, 2014, No. 226/14.

### National Bank of Ukraine's Wrongful Actions

The National Bank of Ukraine was involved in, and/or had knowledge of, the following acts which resulted in the Brokbusinessbank's insolvency as well as its inability to repay its creditors including the Investors.

We understand that Sergey Kurchenko acquired 80.0273% of shares of Brokbusinessbank in 2013, becoming its owner. Thereafter, Mr. Kurchenko, working with the approval and knowledge and consent of the Bank of Ukraine, took actions to misappropriate Brokbusinessbank funds which ultimately led to the insolvency of the bank and its subsequent liquidation. The National Bank of Ukraine was complicit in the wrongful scheme to divert, convert, and otherwise wrongfully take, funds from Brokbusinessbank to third parties, and at a minimum, the Bank of Ukraine was grossly negligent in its supervising obligations of Brokbusinessbank, and/or conspired with Mr. Kurchenko to improperly and illegally withdraw funds from Brokbusinessbank before the liquidation process was complete, to the detriment of its creditors. We are aware that in

Mr. Shevchenko
October 29, 2020
Page 6

connection with Mr. Kurchenko's wrongful actions, the Podolsk District Court of Kiev on issued a verdict in criminal case No. 758/15964/17, wherein the court found that Mr. Kurchenko organized and headed a criminal organization with the aim of committing grave and especially grave crimes, including against state property.

We are also aware that in January 2018, the Kramatorsk District Court of the Donetsk Region issued a ruling (in a case which was initiated on March 28, 2017) regarding $1.5 billion which was misappropriated by a group of individuals associated with the ex-President of Ukraine Viktor Yanukovych, which included in particular, Mr. Kurchenko, under whose management funds were misappropriated from Brokbusinessbank. The State of Ukraine confiscated the $1.5 billion in funds from Mr. Kurchenko and his associates, and redistributed those funds to various entities, including Brokbusinessbank. Although the Bank of Ukraine should have used those funds to repay the Brokbusinessbank creditors who were owed money for their deposits and investments in Brokbusinessbank, it appears that the Bank of Ukraine used those funds for its own benefit.

For example, we understand that funds in the amount of $172,779,191.16 were transferred directly to the National Bank of Ukraine.[4] It appears that among the funds confiscated by the State of Ukraine and part of which were transferred to the National Bank of Ukraine, likely included funds which were embezzled by Mr. Kurchenko and his criminal organization from the country of Ukraine, as well as funds which Mr. Kurchenko embezzled from the creditors of the Brokbusinessbank, including the Invested Funds described in this letter. Although the National Bank of Ukraine received over $172 million, we understand that these funds were not used to pay back the Brokbusinessbank creditors, including the Investors, and instead, these funds were unreasonably withheld by the National Bank of Ukraine, and used for other purposes.

Although the Investors submitted claims to the Fund as part of the liquidation process of Brokbusinessbank, and although the Investors were hopeful that they could obtain the return of their Invested Funds from the Bank of Ukraine, together with appropriate interest, costs, and fees, the Investors' claims remained unsatisfied, which was confirmed by letters from the Fund. This was evidenced by the following letters received from the Fund:

1. Letter No. 27-18981/19 dated November 11, 2019 confirmed that the Zukk Investments would not be returned;
2. Letter No. 35-20863/19 dated December 10, 2019 confirmed that the Intertransgroup Investments would not be returned;
3. Letter No. 27-18980/19 dated November 4, 2019 confirmed that the Kovzel Investment would not be returned; and
4. Letter No. 35-036-20890/19 dated December 10, 2019 confirmed the Didylivsky Investment would not be returned.

---

[4] Through transfers which were made from April 28, 2017 through December 21, 2017, via account No. 25139300001595, which was opened in the name of the Treasury of Ukraine at Oschadbank OJSC.

Mr. Shevchenko
October 29, 2020
Page 7

Pursuant to the Resolutions of the Administrative Court in Case No. 826/19469/14, the National Bank of Ukraine as a state body is subject to liability for its handling of the Brokbusinessbank liquidation and the funds to be repaid to creditors of Brokbusinessbank. We understand that the court in Case No. 826/19469/14, found that the National Bank of Ukraine had taken illegal actions during the period from July 1, 2011 to February 28, 2014 in connection with its failure to take appropriate measures to ensure the protection of the legitimate interests of depositors and creditors in relation to security measures for keeping funds in bank accounts of Brokbusinessbank.

### Conclusion

These examples are just a sampling of some of the inappropriate activities which demonstrate the National Bank of Ukraine's wrongful actions in connection with the liquidation of Brokbusinessbank, and the handling of the funds from Brokbusinessbank, wherein the Bank of Ukraine failed to preserve the bank funds for the benefit of the creditors, including the Investors, and instead, negligently, and/or intentionally, took actions which depleted the Brokbusinessbank funds and diverted funds away from the Investors. Instead, the National Bank of Ukraine used the Brokbusinessbank funds, including the Invested Funds, for its own purposes and to the great detriment of the Investors. As of September 14, 2020 (the date of the assignment of rights from the Investors to Mr. Zhukovskiy) the National Bank of Ukraine is obligated to return funds and to pay damages to Mr. Zhukovskiy totaling $392,868,519.46 in connection with the value of the principal balances, interest, lost profits, statutory damages under Ukrainian law, Florida law, and any other applicable laws, and other damages as set forth herein.

We hereby demand that you pay **$392,868,519.46 within twenty (20) days after receipt of this letter, or no later than November 20, 2020.** Payment can be made to the Shutts & Bowen LLP Trust Account, either by check, or by wire. Please contact me if you would like to make payment by wire, and we can provide additional wire instructions by separate letter. However, should you fail to respond to this demand letter and pay $392,868,519.46 by November 20, 2020, we have been authorized by our client to pursue any and all civil and common law legal remedies available to our client, including, but not limited to, bringing legal action against the Bank of Ukraine in Florida (or any other applicable jurisdiction) for, among other things, conversion, restitution, fraud, conspiracy to commit fraud, unjust enrichment, negligence, and other relief, and seeking compensatory damages, attorney's fees, interest, court costs, as well as punitive, as allowed by Florida law, Ukrainian law, and any other applicable laws, and consequential damages, against the Bank of Ukraine.

Neither the sending of this communication, nor anything set forth herein is intended, nor shall it be deemed, to modify, limit, release, reduce or waive any of our client's rights, remedies, defenses and/or privileges or at law or in equity. All other rights and legal remedies are specifically

Mr. Shevchenko
October 29, 2020
Page 8

reserved, nor are any remedies waived, and our client reserves the right to immediately pursue all other claims available at law or in equity.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

Sincerely,

Shutts & Bowen LLP

Harold E. Patricoff

cc: Aleksey Shtivelman, Esq. (ashtivelman@shutts.com)