UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:21-cv-20019-JEM/Becerra

OLEG ZHUKOVSKIY, ET. AL.,

    Plaintiffs,

v.

NATIONAL BANK OF UKRAINE,

    Defendant.

_____/

**REPORT AND RECOMMENDATION[1] ON
DEFENDANT'S MOTION FOR A MORE DEFINITE STATEMENT**

**THIS CAUSE** came before the Court upon Defendant National Bank of Ukraine's ("NBU" or "Defendant") Motion for a More Definite Statement (the "Motion"). ECF No. [33]. Plaintiffs Oleg Zhukovskiy, ZUKK Trading Limited, Intertransgroup LLC, Nikolay Kovzel, and Vitaly Didylivsky (collectively, "Plaintiffs") submitted a Response in Opposition (the "Response"). ECF No. [35]. Defendant filed a Reply (the "Reply"). ECF No. [36]. The Court held a hearing on this matter on January 18, 2022. ECF No. [48]. Upon consideration of the Motion, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Defendant's Motion, ECF No. [33], be **GRANTED,** and that Plaintiffs be ordered to provide a more definite statement.

    **I.**    **BACKGROUND**

Plaintiffs are alleged depositors in Brokbusinessbank ("BrokBank"), a failed Ukrainian commercial bank. *See* ECF No. [31] ¶ 2. Defendant NBU is the central bank of Ukraine. ECF

---

[1] The Honorable Jose E. Martinez, United States District Judge, referred this matter to the undersigned. ECF No. [41].

1

No. [33] at 2. Although it is undisputed that NBU qualifies as a "foreign state" pursuant to 28 U.S.C. § 1603(a), Plaintiffs allege that NBU is not immune from the jurisdiction of this Court under the commercial activity exception of the Foreign Sovereign Immunities Act." ECF No. [31] ¶¶ 12, 14.

Plaintiffs filed the initial Complaint in this matter on January 4, 2021. ECF No. [1]. On June 30, 2021, Defendant filed its first Motion for a More Definite Statement. ECF No. [24]. Before that motion was heard, Plaintiffs filed an Amended Complaint. ECF No. [31].[2] As a result, the Court denied Defendant's first Motion for a More Definite Statement as moot. ECF No. [28].

In general, although the Amended Complaint is quite lengthy and sets out an elaborate scheme orchestrated by a criminal enterprise, as to NBU and its officials, the allegations revolve around three distinct areas: (1) the improper takeover of BrokBank; (2) the seizing of BrokBank's deposits (that included funds belonging to Plaintiffs); and (3) the use of the seized funds for a money laundering operation based in Miami. ECF No. [31] ¶ 1. Specifically, Plaintiffs allege that "NBU, as a Ukrainian government agency and/or instrumentality, not only failed in its duties to regulate banks, including BrokBank, and prevent irregularities," but also "took actions and consciously failed to take actions and NBU's officers and officials actively participated in the intentional depletion of Plaintiffs' Funds from BrokBank, and money laundering in the United States[.]" *Id.* ¶ 30. Plaintiffs allege that the government of Ukraine initiated criminal actions against members of the criminal enterprise and seized an amount in excess of $2.25 billion, more than $272 million of which related to fraudulent transfers of funds out of BrokBank. *Id.* ¶ 3. Plaintiffs allege that Ukraine then distributed over "$172 million to NBU, but NBU did not return

---

[2] Plaintiffs initially filed the Amended Complaint on July 21, 2021, ECF No. [27], but filed a Notice of Striking the next day, ECF No. [30], indicating that Plaintiffs would refile the Amended Complaint "to correct an inadvertent filing error."

the wrongfully-taken funds back to Plaintiffs" and instead "wrongfully retained the converted funds[.]" *Id.*

In the instant Motion, Defendant argues that the Amended Complaint is so deficient that it is not possible to determine whether the Court has jurisdiction over this case. Specifically, given that Defendant NBU is a foreign state entity, it is "presumptively immune from suit in the United States" under the Foreign Sovereign Immunities Act ("FSIA"). ECF No. [33] at 2. However, the analysis necessary to determine whether an exception to that immunity applies is not possible, according to Defendant, because the allegations are not pled with sufficient clarity. As such, Defendant seeks a more definite statement that: (1) identifies the actions of NBU, specifically, giving rise to Plaintiffs' claims; (2) identifies where the alleged acts occurred; (3) states "the current location and ownership of the funds at issue, if known;" (4) states any factual basis for Plaintiffs' allegation that Plaintiffs' deposits, specifically, were "obtained by NBU and . . . later used to satisfy Ukraine's sovereign debt obligations in the United States;" and (5) states how the Ukrainian court decisions referenced in the Amended Complaint "confirmed NBU's and its officials' misconduct." *Id.* at 1. In addition, Defendant argues that the Amended Complaint is a shotgun pleading. *Id.* at 7–10.

In their Response, Plaintiffs assert that the Amended Complaint either already contains the information that Defendant seeks, such as specific commercial acts of NBU that support Plaintiffs' allegations, or that such information is more properly sought during discovery, such as a more specific geographic description of the location of alleged acts. ECF No. [35] at 15–16. Further, in response to Defendant's allegations that the Amended Complaint violates the Eleventh Circuit's rule against shotgun pleadings, Plaintiffs argue that the Amended Complaint gives Defendant sufficient notice of the claims against it and that Plaintiffs have properly pled their claims against Defendant. *See id.* at 7–15. Plaintiffs also argue that Defendant "has simply delayed answering

3

the Amended Complaint" and has waived defenses such as dismissal under Rule 12(b)(6) because Defendant did not "consolidate its Rule 12(e) Motion for a More Definite Statement with any and all other Rule 12 motions[.]" *Id.* at 18–19.

In its Reply, Defendant argues that discovery is not the appropriate avenue to uncover the information sought by Defendant, as Plaintiffs allege, because "[i]n order to establish subject-matter jurisdiction under the FSIA, the Plaintiffs will have to — at the outset of this case — overcome the presumption that NBU is immune from suit by making the requisite showing." ECF No. [36] at 4. Defendant also reasserts that the Amended Complaint is a "shotgun pleading," arguing that the "Opposition could have tried to clarify, but it only further obfuscated." *Id.* at 3. As to Plaintiffs' claim that Defendant waived certain defenses, Defendant argues that "subject-matter jurisdiction and failure to state a claim can be raised at any time." *Id.* at 6.

**II.     ANALYSIS**

Federal Rule of Civil Procedure 8(a) requires a "short and plain statement of the facts" in order to "give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). Under this pleading standard, "a plaintiff need only give a defendant fair notice of the plaintiff's claim and the grounds upon which it rests." *United States v. Universal Pharmacy, Inc.*, No. 10-24130-CIV, 2011 WL 13319470, at *2 (S.D. Fla. Mar. 2, 2011), *report and recommendation adopted sub nom. United States v. Mg Universal Pharmacy, Inc.*, No. 10-24130-CIV, 2011 WL 13319466 (S.D. Fla. Mar. 28, 2011) (citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 337 (2005)).

In addition to the notice pleading standard established by the Federal Rules of Civil Procedure, the Eleventh Circuit has criticized "shotgun pleadings," or "pleadings . . . that . . . fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty.*

*Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015). However, "[a] dismissal under Rules 8(a)(2) and 10(b) is appropriate where 'it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief.'" *Id.* at 1325 (citing *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir. 1996)) (emphasis in original).

Moreover, "[p]ursuant to Rule 12(e), '[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.'" *Id.*; *see also Vujin v. Galbut*, 836 Fed. App'x. 809, 818 (11th Cir. 2020) ("When confronted with a complaint [where it is 'virtually impossible to know which allegations of fact are intended to support which claim(s) for relief'], defendants . . . should move for a more definite statement under Rule 12(e)."). Moreover, the party moving for more a definite statement must "indicate the defects in the pleading and what details are sought from the nonmoving party." *First Mut. Group, LP v. Hatin*, No. 14-62545-CIV, 2015 WL 12765419, at *4 (S.D. Fla. May 6, 2015) (citing Fed. R. Civ. P. 12(e)). Whereas "discovery procedures provide the intricacies of the issues and evidence for trial[,]" pleadings must provide notice of the allegations. *Id.* (citing *Bazal v. Belford Trucking Co., Inc.*, 442 F. Supp. 1089, 1102 (S.D. Fla. 1977)). Accordingly, a more definite statement is not appropriate where a complaint simply "lack[s] details but rather [when] the complaint is unintelligible and the defendant is unable to respond." *Universal Pharmacy, Inc.*, 2011 WL 13319470, at *2 (citing *SEC v. Digital Lightwave, Inc.*, 196 F.R.D. 698, 700 (M.D. Fla. 2000)).

In evaluating the sufficiency of the pleadings, the undersigned reviewed the allegations of the Amended Complaint as against the three specific areas that form the basis of the suit against Defendant: Defendant's role in the alleged fraud that caused BrokBank to fail, the actions relating to how BrokBank was shut down by the government, and Defendant's use of the funds that were

seized by the government in connection with the BrokBank collapse. At the hearing, because there was no dispute that these were the areas of inquiry, the Court asked Plaintiffs to identify the specific allegations that relate to Defendant as to each of these areas. Such analysis reveals that although the Amended Complaint is certainly lengthy as to the fraud that it alleges occurred, the allegations that tie this Defendant are not sufficient and merit amendment. Indeed, because the Court will have to weigh the immunity arguments, the specificity of the allegations is particularly necessary here so that the jurisdictional issues can be properly evaluated.

First, Plaintiffs allege that BrokBank failed because NBU failed in its obligation to regulate banks and prevent irregularities, which lead to the collapse of the bank. According to Plaintiff, "[t]he sale of the . . . majority interest in BrokBank required NBU's official approval and consent[.]" ECF No. [31] ¶ 41. Plaintiffs allege that that sale ultimately led to the collapse of the bank. At the hearing, the undersigned inquired of Plaintiffs what action(s), specifically, Defendant was required to perform but failed to take. Plaintiffs responded that paragraphs 27 and 43 through 45 of the Amended Complaint provide the allegations of the actions that Defendant failed to take. However, the paragraphs cited by Plaintiffs do not provide sufficient detail.

First, Plaintiffs cite to the allegation that, under Ukrainian law, "NBU is required to ensure the stability of the banking system and to protect the interests of bank depositors and creditors with regard to the security of customer funds in bank accounts, including BrokBank" and "NBU is legally obligated to supervise banking activities on all commercial banks operating in Ukraine through, among other activities, conducting annual audits and on-site controls." *Id.* ¶ 27 n.12. However, this does not provide any notice as to specific conduct that NBU failed to take, as required by law. Indeed, that allegation is a generic statement that as a regulator, NBU was charged with certain functions. The Amended Complaint does not allege what actions NBU failed to take. Indeed, although the Amended Complaint alleges that NBU was required to conduct audits and

6

have on-site controls, there is no allegation that it did not do that, nor are there any other allegations that put Defendant on notice as to how it failed to regulate the bank.

Plaintiffs point to the statement that "a company named 'SEPC,' owned by Kurchenko, announced that it had acquired an 80% interest in BrokBank" and did so by creating fictitious shell companies "[i]n order to avoid obtaining the express permission of NBU . . . . to evade Ukrainian legal restrictions." *Id.* ¶ 43. However, not only does this allegation fail to clarify what conduct, or lack thereof, is attributed to Defendant, but this statement suggests that SEPC's actions were designed to *evade* Defendant. Thus, assuming the formation of shell companies was improper, the Amended Complaint does not state *how* NBU approved such conduct. Plaintiffs also allege that "NBU officials fostered, permitted and participated in Kurchenko's improper takeover of BrokBank . . . by approving Kurchenko's fraudulent scheme to acquire BrokBank through the eight (8) Kurchenko Shell Companies." *Id.* ¶ 44. However, the question left unanswered by the Amended Complaint is *how* did Defendant foster, permit or participate in the alleged improper takeover of the bank by Kurchenko. As written, the allegations amount to the conclusory theory that the fraud would not have occurred if NBU had not allowed it. Still left unanswered is *how* NBU allowed it to happen. Finally, Plaintiffs' allegation that the Antimonopoly Committee of Ukraine imposed a fine against Kurchenko after "Kurchenko's fraudulent scheme to take over BrokBank was uncovered" in no way sheds light on the conduct of Defendant that is alleged in the Amended Complaint. *Id.* ¶ 45.

Second, Plaintiffs allege that the criminal enterprise raided BrokBank of its deposits, including funds belonging to Plaintiffs. ECF No. [31] ¶¶ 43–44. At the hearing, Plaintiffs specifically cited to paragraphs 15, 19, 41, and 48 through 54, in support of its argument that the Amended Complaint is already sufficiently pled. Specifically, Plaintiffs point to "fifteen (15) suspicious transactions – involving companies owned or controlled by Kurchenko – totaling

$15,910,402" that were made "from February 14, 2014 through at least March 14, 2014." *Id.* at ¶ 15 n.7. However, the Amended Complaint does not make clear where these alleged transfers were approved, which is relevant for the FSIA analysis. Moreover, the undersigned inquired of Plaintiffs what it is that NBU failed to do or affirmatively did do as to these transactions. Plaintiffs responded that NBU officials knew that these transfers were improper but permitted the transfers to occur, citing to paragraph 15(iii), which alleges that NBU officials "participated in and permitted, money laundering of Plaintiffs' Funds out of Brokbank[,] a substantial portion of which occurred in the United States, through U.S. Companies, and indeed several of the transfers were identified by the United States Financial Crimes Enforcement Network ('FinCEN') as suspicious transactions." *Id.* ¶ 15(iii). However, this paragraph does not answer *how* NBU officials "participated in and permitted" any conduct. At the hearing, Plaintiffs argued that other parts of the Amended Complaint answer this question, citing to the allegations that "[t]he sale of the Buryak Brothers' majority interest in BrokBank required NBU's official approval and consent" and that Arbuzov, the former chairman of NBU, and the subject of a Ukrainian court investigation concerning his ownership of off-shore companies, "brokered a deal to sell BrokBank to a set of companies controlled by . . . Ukrainian oligarch and businessman Sergey Kurchenko[.]" *Id.* ¶¶ 41, 52; *see also* ¶ 43. According to Plaintiffs, since an NBU official allegedly brokered the deal, NBU should have known about it. Still, these allegations fail to allege what specific actions NBU officials took or failed to take concerning the approval process that led to the alleged money laundering. The conclusory allegation that the NBU official brokered a deal is not sufficient. Indeed, here, as well as in other parts of the Amended Complaint, Plaintiffs refer and rely on investigations of others in Ukraine without relating those investigations or findings to the conduct of NBU. These general allegations and references make it difficult, if not impossible, to identify the actions that NBU took, which are not only necessary in any lawsuit, but are also particularly

critical here where the Court will have to evaluate whether it has jurisdiction over an entity that is otherwise immune from suit.

Plaintiffs also cite to paragraph 53(d), which notes that a Ukrainian court "entered an order concerning Arbuzov's embezzlement of funds, in his capacity as the former Chairman of NBU." *Id.* ¶ 53(a). As the undersigned stated at the hearing, though, Plaintiffs need to allege that Defendant, and not just officials of Defendant, took actions or failed to take actions when it appears that those officials were not acting in their capacity as agents of NBU. Plaintiffs responded that the Amended Complaint shows that the bank is liable for its officials because the bank had a responsibility to supervise and knew of this conduct. This allegation, without more, is not sufficient. The Amended Complaint fails to allege that NBU should have known of the conduct of these officials. Indeed, simply stating that they had an obligation to know is not enough. Further, Plaintiffs allege that NBU officials "Arbuzov and Sorkin supported and took actions (and inactions), which would allow Plaintiffs' Funds to be siphoned from BrokBank by the Criminal Enterprise[.]" *Id.* ¶ 51. However, Plaintiffs could not cite to any paragraph in the Amended Complaint that specified what the actions and the inactions were. Plaintiffs also state that paragraph 19 shows that the transfers occurred in Miami. *See id.* ¶ 19 (alleging that "these illegal schemes involved, among others, wrongful actions taken in concert with NBU through its officials, by [individuals and companies] . . . operating out of . . . Miami, Florida . . . all on behalf of, and on the direction of, NBU and its officials."). However, how NBU directed these actions is unclear.

Finally, the third category of claims concerning Defendant is that, after the government took over the bank, NBU was involved in distributing Plaintiffs' funds in a fraudulent way—rather than returning the funds to Plaintiffs. As with the other categories of allegations, the undersigned asked Plaintiffs at the hearing where the Amended Complaint alleges what specific actions NBU took or did not take despite a requirement to do so. Plaintiffs cite to the allegation that "Depositors

learned that funds [belonging to Plaintiffs] in the amount of $172,779,191.16 were transferred directly to NBU" "[t]hrough transfers which were made from April 28, 2017 through December 21, 2017, via account No. XXXX1595, which was opened in the name of the Treasury of Ukraine at Oschadbank OJSC." *Id.* ¶ 161 & n.3. Further, Plaintiffs allege that, "instead of returning the funds to the Depositors, NBU used the funds for its own benefit" even though "Plaintiffs' Funds rightfully belonged to the Depositors and NBU was required to use those funds to repay the Depositors who were owed money for their deposits and investments in BrokBank." *Id.* ¶¶ 26, 123. As the undersigned noted at the hearing, however, more detail is required as there is no allegation that the money referenced was Plaintiffs', nor any allegation that Defendant was required to return the funds to Plaintiffs as opposed to the actions that it did take concerning the funds. As the Court noted at the hearing, without an allegation that there was an obligation to return the funds to Plaintiffs, it is unclear what obligation was breached given that NBU, as an entity of the government of Ukraine, may have had duties to other investors and/or other obligations to process or invest the funds at issue. Again, the allegations in the Amended Complaint are lengthy, but when analyzed as to how the fraud relates to NBU, they are short on specificity and substance and often consist of conclusory allegations that are insufficient.[3]

### III. RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion for a More Definite Statement, ECF No. [33], be **GRANTED.** Further, the undersigned recommends that Plaintiffs be ordered to submit the Second Amended Complaint within fourteen days of the

---

[3] The Court does not address Plaintiffs' argument that other Rule 12 defenses have been waived because Defendant filed a motion for a more definite statement separately from a motion to dismiss. Doing so would require the Court to consider a matter that is not yet before it. Instead, Plaintiffs may raise the issue of waiver if and when Defendant raises defenses to the suit.

District Court's order, per Plaintiffs' representation that such a deadline is sufficient. Further, in consideration of events in Ukraine as well as the need to advance the briefing in this matter, the undersigned recommends that Defendant be required to file any motions challenging the Second Amended Complaint within sixty days of the filing of the Second Amended Complaint.

IV. **OBJECTIONS**

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Judge for the Southern District of Florida, within **SEVEN (7) DAYS** of being served with a copy of this Report and Recommendation. The parties were given ample time to articulate their position at the hearing such that seven days is able time for the preparation of any objections. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on February 9, 2022.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**